Thank you, your honor. May it please the court, my name is Shelley Stewart and my co-counsel Julie Fisher and I are here on behalf of defendant appellant Pamela Jane McClary. I'd like to reserve two minutes of my time for rebuttal, if I could. As your honors know, this is an appeal on behalf of Pamela Jane McClary against Donald and Mary Kay Kayser with respect to an easement that Ms. McClary's father executed in January of 2000. As you've seen from our briefing, there are a number of errors that we are asserting on appeal. However, I'm going to try to limit my discussion to just a couple of those errors. And although many of those errors overlap, so you'll hear discussion on a few of them, I've tried to pick the most important two mainly because the issue of attorney's fees has a significant financial impact on my client. And that also includes a lot of competency discussion. Also, another major issue is consideration because if this court, if this court decides consideration in favor, the consideration issue in favor of my client, then that restores the value of my client's property. So. Address consideration first because obviously we wouldn't get the fees if you wanted consideration. The easement itself recites that it was done for consideration, correct? Yes, your honor. And under Idaho law, as I understand it, that gives rise to a presumption of consideration. That's correct. And if you look at the facts of this, we don't know precisely what happened, but it seems to be a reasonable assumption that the easement induced the purchase of the neighboring property. In other words, if you buy this, I'll make sure that there'll never be anything in your way. Given all those facts or inferences we can make from the record, what do you have in this record to demonstrate the absence of consideration? Your burden to show it. Yes, your honor. And we do have the burden of showing that there was a lack of consideration. And I think it's important to note that in this action plaintiffs, the casers took the position that no consideration was necessary. However, as your honor stated, there is consideration actually stated in the written easement. But as we thoroughly briefed, that oral agreement or that alleged oral agreement that acted as consideration for the written easement cannot actually be consideration for the written easement. I assume that's right. I assume that's right. Tell me what evidence you have that overcomes the presumption that there is consideration here. Yes, your honor. And there were all of the testimony at trial was that Mr. McCleary was given nothing in return for the written easement. Rex Larson, Don Kaser, as well as Pam McCleary, testified that there was actually nothing given to Mr. McCleary for the written easement. Forgive me, counsel. Perhaps I'm in error here, but I thought at SCR 32 that several witnesses testified that the sale of Lot D was conditioned on the granting of the view easement. Is that incorrect? Yes, your honor. I believe it is incorrect. But you told us to ignore that. Is that because it was oral? No, your honor. It's not because it's oral. One of the reasons that we've stated that the oral agreement, the alleged oral agreement, cannot act as consideration is based on the fact that there was a letter in the record that Rex Larson sent to Attorney Randall Frederick. And in that letter, Mr. Larson stated that he wanted an easement drafted pursuant to an agreement, an alleged oral agreement between Paul Larson and Jim McCleary that occurred in October of 1980. However, from the documents in the record showing the purchase of the property, that property was purchased in February 1980. The only time frame that we have with respect to the oral agreement is that letter stating that the agreement was entered into in October. But let me try this again because I'm having some difficulty with your argument. This case was tried, so we're not talking about summary judgment. Under Idaho law, is the presumption enough to get you to the jury on the issue of consideration? Your honor, there is a presumption that consideration exists. Right. Is the presumption enough? Let's assume we have a case in which the other side presents no evidence but the presumption. You have a document that says it was done for consideration. Is that enough to get them to the jury on the issue of consideration? It is, your honor, but that presumption is rebuttable. Right. But that's what I'm asking. Are you arguing that on this evidence, the trial court erred in not granting you judgment? Because if you are, then doesn't the presumption present conflicting evidence? Wasn't this an issue for the jury, not for the court? Your honor, yes, it was. And our argument is that the jury erred in determining that there was consideration because at this point, this court is looking at the evidence based on its noble review of the evidence. Well, that's why I have difficulty with this, so let me keep trying. We're missing each other somewhere along the way. We review jury verdicts to see whether there's any substantial evidence that might support the verdict. We don't review them de novo when the facts are in front of them. And I gather from what you said to Judge Hurwitz that under Idaho law that the presumption recited in the easement would under Idaho law be substantial evidence if there's nothing to rebut. Yes. So if there's something to rebut it, isn't the question for the jury whether they believe the rebuttal evidence, as opposed to us figuring out whether we believe it, or is this some sort of vanishing presumption that only is there until somebody produces some contrary evidence? No, Your Honor, you are correct. It would be for the jury to determine whether. So what you're telling us is that the jury, we should find that the jury erred in weighing all this evidence and that the jury should have found that there was no consideration. Yes, Your Honor. Okay. Thank you. I was having some difficulty with your reading. And, Your Honor, as I stated, the casers took the position at trial that no consideration was necessary. So although we met our burden of proving that there was no consideration, there was no rebuttal presented that there was actual consideration given. And as I stated, the oral agreement cannot act as consideration for the written agreement, and that is for a number of reasons. Let me ask you this, counsel. I hate to keep coming back to this, but my understanding of the record is that these two gentlemen, both of whom are deceased, were good friends. Is that right? That's correct. They're good friends. And many times good friends, you know, they don't write everything down. You know, they just understand each other. And there was some evidence that was brought, as I mentioned here, that suggested that there was a clear understanding between these gentlemen. Now, it didn't satisfy the statute of frauds or any of these other things, but could the jury, which apparently heard this, have considered, properly considered, whether there was an oral agreement between these two friends in connection with the sale of the property? Your Honor, yes. I do think that the jury could have considered whether that oral agreement acted as consideration, whether that oral agreement actually existed. No, I get that, but that's part of what juries do. Yeah, and I understand that. And one thing that I think is important to note here is that nobody can testify as to the exact terms of that alleged oral agreement. There was testimony from Rex Larson that he had no immediate knowledge of the agreement. Let me go back one other point, because I think, as we've all discussed, we don't even get to these other points if this one is in your favor. But as I understand it, if the easement is not on this property, then the other property is essentially worthless. Is that correct? I'm sorry, Your Honor. Could you repeat that? Okay. My understanding is that but for the easement, Lot D would essentially be worthless then and now. Is that fair? And that would be the lot with the easement actually on the property? No, no. Perhaps I am misstating it. My understanding from the record is that when your client's father, I guess, entered into this agreement, the other guy allegedly said, you know, I'll buy it, but it doesn't do me any good. I can't see anything, can't do it for anything. Without the easement, I'm not going to do it. So whether that's true or not, that's what the allegation is. And the impression I got from reading the record and perhaps from actual statements is that Lot D, without the benefit of the easement, was and is essentially worthless. Is that correct? That is not correct, Your Honor. Okay. What can you use it for? What's its benefit if the easement doesn't exist anymore? And, Your Honor, just so that I can clarify and make sure I understand your question, basically we're dealing with Lot B has the easement on it. Lot D is where the Kayser's house actually is. I understand that. But so let's just say there's no easement on Lot B and they build this huge brick wall in front of it or whatever. You know, the other one's not really worth anything, is it? It actually is, Your Honor. I talked about it quite a bit. All that we're talking about here is the Kayser's home having a view. Okay. There's a house on the property. It's actually valued quite high. Basically having the view easement. But it was built presumably based on the testimony because it had the easement on the other lot, right? And I don't believe that that is actually evidence in the record, Your Honor, and that's based on the fact that there was the letter. The only time frame that we have to base the oral agreement, the alleged oral agreement on, is that letter that went from Rex Larson to Randall Fredericks, which states that the oral agreement was reached in October, the property was purchased in February. There's also nothing in the purchase documents or the deed saying anything about a view easement. And the fact is that Paul Larson was in real estate. Right. And if he was purchasing the property based on having a view easement, it seems that we can presume he would have included that in the purchase. One, one, one. It's backwards. That's why I'm still having some difficulty with this. Let's assume for purposes of this that the two gentlemen get together and one says, I'll buy this property if you give me an easement. And Mr. McClary, the father, I take it, says, sure. He writes one, they write one out. It's a legal document, it's recorded, and it says it's for valuable consideration. Your position is that they also have to recite in that, that's because I wouldn't buy the property but for this. It didn't have to be recited. However, because these two gentlemen are deceased, we have to look at all the surrounding evidence, and the only evidence we have is that it was entered into in October. The property was purchased in February. There's no other evidence of the time frame of this oral agreement. And, Your Honors, I'd like to move to the attorney's fees unless I can address any other questions. Okay. Okay. With respect to the attorney's fees, and I hope Your Honors have actually or will plan on reading the decision of the district court, which awarded $131,000 in fees against my client. As you are aware, in order to grant fees under 12-121, my client had to defend, the court had to make a finding that my client defended this matter frivolously, unreasonably, or without foundation. And I think it is clear, very clear from the record in this case, that there were valid defenses of competency, there were valid defenses of consideration, and also the court felt the same way through the judgment as a matter of law motion, also through the motion for summary judgment. Those issues were argued thoroughly in those motions. However, the court did not grant summary judgment, did not grant a motion for judgment as a matter of law. However, now we're dealing with fees whereby the court found that all of my client's defenses were frivolous, unreasonable, without merit. And I think that the judge's decision on this issue clearly shows that the judge, that the judge imposes on the motion in this case, Your Honors. Let's assume, let's assume arguendo that the judge indeed found each of the points you mentioned to be utterly without merit. There would, under Idaho law, that would have been a proper basis for awarding attorney fees, right? It sure would, Your Honor. Okay. And I'd just like to point out, so I'm running out of time, but the Garner case that I cited in my brief, it specifically states that the court has to look at legal positions taken in the case. Not the spite fence put up before you. No, Your Honor. That's what damages deal with. Yes. But how do we review the judge's decision on fees? Do we review it for abuse of discretion? Yes, you do, Your Honor. And just looking at the Garner case, I mean, I think it's very clear that the court in this case looked at, or the court in Garner specifically stated that you cannot look at the intention of the party prior to litigation. You can't look at whether there was a personal vendetta or whether the defendant was taking actions based on a vend. And the Garner case is actually very similar factually to the case we have here. In this case, the court looked at Pam McCleary's actions prior to litigation and said she had a vendetta against Mr. Kaser. Therefore, fees are proper for defense. Well, actually, didn't the court look at the evidence in determining each of these points and concluded that after looking at the evidence that there was animus? Your Honor, the court claimed to look at the evidence. However, when the court would sum up the evidence, it was basically incorrect. But again, and I'm not sure this is helpful to you, but as you mentioned to Judge Hurwitz, the issue here in the standard of review is abuse of discretion. It's a very difficult standard for you to overcome. We basically have to find that the judge erred as a matter of law, in effect, for you to win on this point, don't we? Yes, Your Honor, that is exactly correct. And I think it's important for the court to also note that 12.21 is a very difficult standard in order for the court to grant fees. And in this case, it's clear that there were meritorious defenses and that there was absolutely no basis for this court to award fees under 12.21, stating that our cash was privileged. All right. Thank you. I'm sorry that your time is all used up. Okay. We'll hear from the opposing counsel. Your Honor. Okay. Please support. I'm Jeff Seitzer. If I may follow. I'm Mary Kaser. Your Honor, I just can't believe this is the case in which the judge and jury got the decision right. There was substantial evidence with regard to the issue of consideration, Mr. McClary's competency and punitive damages. Let's assume you're right about all that. I want to – could you address the issue of attorneys' fees? Sure. There were – the other side at least put on some witnesses that cast doubt on Mr. McClary's competency. I don't have any problem with the notion that you convinced the jury that he was competent. But given that she had a couple witnesses that cast doubt on competency, why is this a case that should have fees under 121? Well, I'm not sure that those witnesses really did cast doubt. All right. Then tell me why. Because I think it partly is when is this competency judged? There was one witness in particular who testified, Mr. Larson, who was actually with Mr. McClary at the time the document was signed. Mr. Larson, as he testified, sat there with Mr. McClary. He knew him in the past for years and years and years. Went through this document with him, talked with him about it. No, that evidence was compelling. My question is – is different. My question is did she defend what's the language of 121 in bad faith or whatever? Because she had a couple witnesses who presented evidence to the contrary. The jury didn't believe it, and God bless them. But isn't that enough to get her past the 121 issue? I don't think so. I think that's a call the judge has to make, weighing all of the evidence that was presented. Because this was not very compelling evidence. Some issue about the person, Mr. McClary, wasn't using oxygen. But he just disregarded everything else. And I think that's what the judge ultimately does in weighing and utilizing discretion is to weigh that issue out. And that's what he did in this case. Because I understand that counsel, Idaho Code 54E1 says that the attorney piece can be ordered only when it finds, from the fact presented to it, that the case was defended frivolously, unreasonably, or without foundation. There's no element of bad faith in there. There's just a frivolousness. So in this particular case, where would you – what would you refer us to in the record where you believe that the judge made findings upon which he based the attorney fee ruling and it would qualify under 12-121? Well, the judge issued a 20-page decision on those very points, Your Honor. So you would say basically that the decision in totality is the finding that's required here, right? Yes. Okay. And I think that's what the judge is ultimately required to do. And I apologize. I can't go through it with you. That's all right. But he went paragraph by paragraph by paragraph deciding whether this was reasonable, whether this was a reasonable defense in this case, whether it was without foundation. And I think he did the right thing in weighing those very things. Could the judge have awarded fees if he thought that, as I recall, there were seven issues raised on appeal, that the defense of six of those issues was not reasonable but the defense of one of them was? Does the entire defense have to be unreasonable under Idaho law? Or are you allowed to award fees if, in effect, the prosecution of the case was made more difficult by unreasonable defenses? I don't think there's an Idaho law case that really addresses that on point. Certainly, I think the spirit of the Idaho rules does this kind of a balancing factor. The judge has to take this all into account. So there may be one minor point that was really never contested, but that could still lead to an award of attorney's fees if the real battle was frivolous. And I will point out there was a case that was relied upon. I guess it wasn't relied upon by the judge, but it was a very similar case involving Spike Fentz, and he's been a freshman. I would submit to this court, though, that this judge went through and he did what he was supposed to do. He made a reasoned decision. He made reasoned findings of that and reached a conclusion that award of attorney's fees was appropriate given all this evidence. And I think one of the issues was some summary judgment issues. Evidence presented on a summary judgment to merit to go to trial wasn't even presented at trial at the end of the day, and some of that testimony was actually different. I have a slightly different question now. Obviously, we're dealing with Idaho law, not federal law. But under Idaho law, how is a judge to measure attorney fees? Is there a lodestar concept in Idaho law? What does a judge do? Let's assume, arguendo, that attorney fees are appropriate, but apparently they're very substantial in this case. There's obviously a lot of bad feelings and not that much involved. But how is the judge to weigh the attorney fees? In other words, as part of our consideration, do we not only weigh whether the law permits attorney fees, but whether the amount of attorney fees that were awarded is excessive? Well, I'm not sure that was even an issue raised on appeal. But you would define as I haven't raised that, right? Your Honor, I'll address your question, Frank, because I can't hear. The Idaho Rule 54, I can't get you to the subsection. It gives a list of six, seven items that the judge is supposed to consider when making an award of attorney's fees on the amount. And it's like the difficulty of the case, the nature of the fight, the reasonable rates charged within the area. What are some of the other things? I think that answers my question. There is an Idaho Rule, but the opposing side did not raise this issue on appeal. Correct. Okay. And that's what the judge did. I actually think he cited that in his memo and it went through. And, frankly, he reduced our attorney's fees appropriately where he thought. He used his discretion and did that very thing. Yeah, and that's why, in looking at the memo, I was asking whether or not it's possible that the judge might have said, well, you have at least some basis for raising the consideration defense, but you have no basis for raising a bunch of other defenses, and since you lost in the entirety, I can award fees. Could the judge do that under Idaho law? I do not know. There's not a lot of cases out there, but I think so, because the judge has a vast amount of discretion under Idaho law of when to award attorney's fees on this frivolous, unreasonable defense of a case. In some respects, if you could have one little thing, the meritorious, say in some little initial part of a pleading there's a motion to strike or something, and the judge rules in favor of one party, that can't be the basis for overriding the meaning of the statute in the totality of the case, can it? I agree with you. I agree. I don't think you can have one little issue. You've got to look at it as a whole. I would submit to this Court on this issue of consideration. The statute in Idaho presumes consideration when there is a written agreement, and, in fact, these two gentlemen, as discussed earlier, reached an agreement to sell a lot and buy a lot based upon an easement. It was in 1980 they reached this agreement. Well, in 2000, I forget, I think it was 2000, 2005, when the easement was actually executed, then they wrote it down. There's absolutely nothing wrong with that. There's no requirement in the statute to put your agreement in writing at the time you make it. You can do it years and years and years after the fact. Is there any evidence in the record that shows that these folks dealt with one another in the purchase and sale of real estate on other properties? I don't believe so. Okay. I don't believe so. I will tell you one was a real estate person. No, I gathered that. If there was a pattern of conduct, that might be relevant, but if there is nothing in the record, then. Frankly, one of the big problems in this case is we were dealing with two people who had deceased at the time of trial, so you lose all of that testimony from these actual people. And I think the problem with the defense of this case is to come in and try to say there's no money change campaign, no money change campaign. Well, that's not the test for consideration. It never has been the test. A peppercorn can be consideration at the end of the day. At the very least, we have these two gentlemen that were substituting a prior agreement that they had for the one they put down in writing. That would be consideration in and of itself. So to argue consideration in this case and argue it outright aggressively to the very end, it seemed wholly unreasonable and frivolous, especially in the face of the presumption that was there. And especially in the face of the fact that the two people who actually dealt with this contract were deceased. But wrote down what they meant. Your opponent hasn't talked about it, but I'm interested in what's apparently an issue of first impression under Idaho law, which is whether or not purely economic damages can be recovered for tortious interference with contract. I don't think there's an Idaho case on it, but is there any contrary authority anywhere? It seems to me intuitive that one ought to be able to recover economic damages for tortious interference with contract because that's the kind of damages that typically result from tortious interference with contract. So have you discovered any contrary authority? I can't point to the court, to the judge's memorandum of decision on this very issue, which his long, exhaustive search and the cases that came up are all too much. You can get economic loss only. I think it makes sense because that's the law that is to be remedied. I think Idaho, there are some, there are two cases that say economic loss, you can't recover purely economic loss in tort. Right, but where there's an underlying contract that would afford the remedy. The balance of them deal with negligence actions. I mean, clearly, and that's the last case I cited in this court, the Stanford case, I believe. It talks about the economic loss rule. It bars purely economic damages in a negligence action, not in a tort action. Fraud, for example, is another one where you may have only economic loss. Clearly, that kind of action isn't barred by the economic loss rule. Tortious interference with contract, that's what we have. It's economic expectations being interfered with. Can you address the damages issue in this case, the awards of damages? Somehow the awards seem messed up to me. And you know what I'm talking about. I know it was a jury trial. Right. And I know the jury heard all of the evidence. The evidence was a diminishing value of what I think was Lot B, the case of property, because this was interfered with and put a kibosh on a sale that was pending, and I believe that was the intent. I do not know how the jury ultimately got to $15,000 even in damages. There was some evidence that these were the maintenance costs that were incurred going forward during the time of this case. And there was some evidence that there was a diminishing value in this property because between the Richardson's refusal to go forward with the sale and the time of trial and the value, we had appraisers that came in and testified to that. So I think they made some sort of conclusion that $15,000 was correct. And the punitive damage issue, I can't answer that. No, I was thinking of the compensatory damage issue. I was just trying to figure out, and sometimes with juries you can't figure this out. I was just trying to figure out the basis for a $15,000 reward in this case, and I was having some difficulty finding it. Yes. I really have no insight in that at all. The other issue here was this competency issue. And I think maybe I addressed this after Mr. Varsity, who met with Mr. McClary in this agreement, who knowingly testified that he was competent at that point in time. The other issue that I wanted to bring up was the admissions from the 13th bill. I wanted to point out that the judge correctly instructed the jury on what the effect of a will is. They can't. You can enter into your competency with less on a will than a contract. He properly instructed the jury. That was jury instruction 22 and 23. And he properly instructed the jury as to what is required on this competency issue. And finally, I believe at the end of the day, that will was relevant to Mr. McClary's competency when he executed the will, because there were some waivers of Idaho law giving substantial gifts in his will to health care providers. And there was some argument made that it was relevant because Mr. McClary, because of his health issues, became incompetent when he signed the easement. But the issue is not only did he stay incompetent for the rest of the remainder of his life, but clearly he had some competency later on down the road. And I believe his surgeon, his cardiac surgeon testified he was able to give informed consent to a surgery months, after this easement was actually signed. That's all I have unless there's any further questions. I don't think we have any further questions. We thank all counsel for their argument in this interesting case. The case just argued is submitted.
judges: Alarcon, Smith, Hurwitz